Commonwealth *v.* Riggins, Appellant.

Submitted September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William C. Haynes,* Assistant Public Defender, and *Theodore S. Danforth,* Public Defender, for appellant.

*James R. Leonard, Jr.,* Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., December 11, 1974:

Appellant was found guilty by a jury of a violation of The Uniform Controlled Substance, Drug, Device and Cosmetic Act for possession of 53.9 grams of marijuana.[1] He was later sentenced to two to five years imprisonment and a $100 fine.[2] In this appeal, appellant con-

---

[1] Act of April 14, 1972, P. L. 233, No. 64, §13, *as amended,* Act of October 26, 1972, P. L. 1048, No. 263, §1 (35 P.S. §780-113(a) (30)).

[2] Appellant was sentenced pursuant to section 780-113(f)(2), which provides:

"(f) Any person who violates clause (30) of subsection (a) with respect to:

. . . .

"(2) Any other controlled substance or counterfeit substance classified in Schedule I, II, or III, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding five years, or to pay a fine not exceeding fifteen thousand dollars ($15,-000), or both.

. . . ."

tends that the lower court abused its discretion in imposing sentence upon appellant, in view of the fact that others charged and convicted in Lancaster County of the same or more serious offenses were granted less severe sentences.

The trial judge has broad discretion in imposing sentence. *Commonwealth v. Wrona,* 442 Pa. 201, 275 A.2d 78 (1971) ; *Commonwealth v. Cox,* 441 Pa. 64, 270 A.2d 207 (1970). If the sentence imposed is within statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment. *Commonwealth v. Hill,* 453 Pa. 349, 310 A.2d 88 (1973) ; *Commonwealth v. Person,* 450 Pa. 1, 297 A.2d 460 (1972) ; *Commonwealth v. Wrona, supra; Commonwealth v. Warner,* 227 Pa. Superior Ct. 291, 324 A.2d 361 (1974) ; *Commonwealth v. Zelnick,* 202 Pa. Superior Ct. 129, 195 A.2d 171 (1963), *cert. denied,* 377 U.S. 1006 (1964) ; *Commonwealth v. Pouls,* 198 Pa. Superior Ct. 595, 182 A.2d 261 (1962). This court has the power to modify an obviously excessive sentence, but has rarely utilized that power, preferring instead to rely on the good judgment of the trial judge. *Commonwealth v. Zelnick, supra; Commonwealth v. Bilinski,* 190 Pa. Superior Ct. 401, 154 A.2d 322 (1959) ; *Commonwealth v. Warner, supra.*

Although it is not clear from appellant's brief, apparently he is contending that he received a more severe sentence, because of his exercise of the right to stand trial, than defendants who had pled guilty. In support of this contention, appellant cites four examples of offenders charged and convicted of the same or more serious offenses in Lancaster County who received lighter sentences. The four convictions, one in 1973 and three in 1974, involved possession or delivery of heroin or marijuana. The defendants were sentenced to periods of imprisonment ranging from three months to twenty-three months, and, in one case, two years pro-

bation. In each case the defendant had pled guilty to the charges, and was sentenced pursuant to plea bargains entered into with the District Attorney's Office. The four defendants had no connection with the appellant, and there is no indication as to whether the four were tried before the same judge.

We find that the four isolated instances cited by appellant do not indicate a concerted attempt by the trial courts of Lancaster County to impose more severe sentences upon those who request a trial as opposed to those defendants who plead guilty.[3] To randomly choose four example cases over a two-year period and to impute appellant's conclusions, is to assign immense consequences to the sparse and self-serving record presented by appellant. Appellant provides no information as to the disposition of other convictions in Lancaster County for similar offenses during 1973 and 1974, nor does he negate possible extenuating circumstances involved in any of the four cases.[4] In light of these ob-

---

[3] In *Commonwealth v. Staley*, 229 Pa. Superior Ct. 322, 324 A.2d 393 (1974), the trial judge indicated to appellant's counsel that he was going to impose a more severe sentence because appellant had not pled guilty, but had instead chosen to go to trial. This court noted "that a plea of guilty may be a proper factor for a judge to consider in deciding whether to give a more lenient sentence. It does not follow that the converse is true. A plea of not guilty or a demand for a jury trial are not factors that a judge should consider in deciding whether to give a more severe sentence." 229 Pa. Superior Ct. at 324, 324 A.2d at 395.

In *Staley*, the record contained a statement by the trial judge to defense counsel indicating that the court was imposing a more severe sentence because of the defendant's lack of a guilty plea. In the instant appeal, the record contains no such statement, and the appellant's contentions are apparently based on an intuitive feeling that the trial courts of Lancaster County impose more severe sentences to those who demand trials. *Staley* is inapposite to this appeal.

[4] Appellant did state that "[t]he listed names were but a few of the many who have received better treatment at the hands of the Lancaster County Court." Appellant's brief at 3-4.

vious difficulties, we find that appellant's contention has no basis.

Appellant's imposed sentence was within the statutory limits, and, despite appellant's contention, we do not view the sentence manifestly excessive so as to constitute too severe a punishment.

Judgment of sentence affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that the lower court abused its discretion in imposing sentence.

On January 22, 1974, appellant was convicted by a jury of violating §780-113(a)(30) of The Uniform Controlled Substance, Drug, Device and Cosmetic Act,[1] which prohibits, *inter alia*, the possession of a controlled substance with intent to deliver.[2] Appellant was found in possession of 53.9 grams (approximately two ounces) of marijuana. Appellant is a married man, age twenty-one, with several small children and has no prior criminal record. The trial judge sentenced appellant to pay a fine of $100.00 and to undergo imprisonment for a period of not less than two nor more than five years, the maximum permissible period of incarceration.[3]

The sentence imposed is within the statutory limits. The appellate courts of this Commonwealth have stated many times that we will not interfere with the discretion of the trial court in the imposition of sentence. See, e.g., *Commonwealth v. Pouls,* 198 Pa. Superior Ct. 595, 182 A.2d 261 (1962). We have recently stated, however, that the appellate courts do possess the authority to modify a sentence which is manifestly excessive and

---

[1] 1972, April 14, P. L. 233, No. 64, §1, eff. June 14, 1972.

[2] Marijuana is a controlled substance under §780-104 (1) (iv) of the Act.

[3] Under §780-113(f)(2), a violation of §113(a)(30) in regard to a non-narcotic drug carries a maximum sentence of five years imprisonment, or a $15,000 fine, or both.

inflicts too severe a punishment. *Commonwealth v. Warner*, 227 Pa. Superior Ct. 291, 324 A.2d 361 (1974). See also, *Commonwealth v. Pouls*, supra.[4] This appellate power is reserved for the extraordinary case; we normally defer to the sentencing discretion of our lower courts. When a sentence is within the legal limit set by our legislature, this Court is, and should be, loathe to tamper with the trial court's discretion. In the rare case, however, where the sentence imposed raises concerns of constitutional dimensions, this Court must exercise its powers of appellate review. Cf. *Baker v. United States*, 412 F. 2d 1069 (5th Cir. 1969). This case falls within that narrow category.

Appellant argues that the trial judge abused his discretion in imposing the maximum period of incarcer-

---

[4] See also, American Bar Association Standards Relating to Appellate Review of Sentences, §§ 1.2 and 3.2:

"1.2 Purposes of review.

"The general objectives of sentence review are:

"(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

"(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

"(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing fairness of the sentencing process; and

"(iv) to promote the development and application of criteria for sentencing which are both rational and just. . . .

"3.2 Powers of reviewing court; scope of review.

"The authority of the reviewing court with respect to the sentence should specifically extend to review of:

"(i) the excessiveness of the sentence, having regard to the nature of the offense, the character of the offender, and the protection of the public interest; and

"(ii) the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based."

ation on a first offender found in possession of a rather small amount of marijuana.[5] Appellant cites instances where defendants guilty of the same or similar crimes in 1973 and 1974 were given much more lenient sentences by the same court: (1) for possessing one pound ten ounces of marijuana with intent to deliver, a defendant received a sentence of three to twelve months; (2) for three counts of delivering marijuana to an undercover agent, a defendant received a sentence of three to twelve months; (3) for possession with intent to deliver of nineteen bags of *heroin,* a defendant received a sentence of eleven to twenty-three months; and (4) for possession with intent to deliver of nineteen bags of *heroin,* a defendant was sentenced to two years probation. In a vacuum, such sentencing disparity proves little, since we are possessed with less information of the surrounding circumstances than the trial judge. These four defendants, however, had one factor in common—they all pleaded guilty. The appellant in this case exercised his constitutional right to stand trial. The disparity in the sentences imposed cannot be explained by surrounding circumstances because the appellant was a first offender in possession of only two ounces of marijuana.

This court has recently stated ". . . that a plea of guilty may be a proper factor for a judge to consider in deciding whether to give a more lenient sentence. It does not follow that the converse is true. A plea of not guilty or a demand for a jury trial are not factors that a judge should consider in deciding whether to give a more severe sentence." *Commonwealth v. Staley,* 229 Pa. Superior Ct. 322, 324 A. 2d 393 (1974). In the present case, the Commonwealth's brief concedes that

---

[5] Had appellant been found with thirty grams of marijuana rather than 54 grams, the maximum legal sentence would be thirty days imprisonment. See §113(a) (31) and §113(g) of the Act.

appellant "received a sentence which was more severe than usual for the offense charged." The clear implication is that appellant received the maximum possible jail term because he exercised his constitutional rights. An affirmance of this sentence can only place pressure upon defendants, and defense counsel, to plead guilty rather than to stand trial. A practice which may deter the exercise of the constitutional rights to plead not guilty and/or demand a jury trial cannot be tolerated.

Although this opinion is based on the possible "chilling effect" on constitutional rights which may result, it is important to note the severity of the sentence imposed. Appellant received a possible jail term of five years for possessing two ounces of marijuana with intent to deliver. In other counties of this Commonwealth, a defendant, especially a first-time offender, would be placed in a pre-trial probationary program,[6] and would receive no jail term at all.

It must be reiterated that this appeal presents an extraordinary situation. Modification of sentences is a serious matter and should not be resorted to lightly. It would be remiss, however, for this Court to allow a first offender found in possession of two ounces of marijuana to be sentenced to a five-year jail term, while the same lower court has sentenced a defendant found in possession of nineteen bags of heroin to a two-year probation.

---

[6] In a telephone conversation with the Assistant District Attorney, Chief, Legal Counselling Division of Philadelphia County, we were advised that defendants found with one ounce of marijuana or less are arrested but are routinely discharged. A defendant found with two ounces of marijuana is arrested and his case is listed for trial. Sometimes, such a defendant will be discharged. Usually such a defendant will be placed in a pre-trial probationary program, especially if he is a first offender, where he will have a non-judicial hearing and will subsequently be placed on probation for a certain period. If the probation is completed without violation, the record is expunged.

The judgment of sentence should be vacated and the case remanded for resentencing.

---

DISSENTING OPINION BY CERCONE, J.:

I would modify the judgment of sentence imposed herein solely because on the facts of this case the sentence was manifestly excessive and thereby constituted an abuse of discretion by the court below.

---

DISSENTING OPINION BY SPAETH, J.:

I agree with Judge HOFFMAN and Judge CERCONE that the lower court abused its discretion in imposing sentence, but I reach that conclusion by somewhat different reasoning. In my view three issues must be examined. The first concerns the substantive principles that underlie the existence of our power to review a sentence; the second concerns the procedural principles that dictate the manner in which that power should be exercised; and the third concerns the application of these substantive and procedural principles to the facts of this particular case.

I

It has often been said that the Supreme Court and this court each has the power to review sentences and to set aside a sentence that is manifestly excessive in that it inflicts too severe a punishment; and Judge PRICE has in his opinion cited some of the cases so stating. I believe that the power to review sentences is an inherent part of appellate power. Whether I am right about this, however, is unimportant, for in Pennsylvania the power has been conferred by statute. The power has been conferred on the Supreme Court by Section 1 of the Act of June 16, 1836, P. L. 784, 17 P.S. §41 ("The supreme court . . . shall have power . . . to examine and correct all and all manner of errors of the

. . . courts of this Commonwealth . . . as well in criminal as in civil pleas or proceedings, and thereupon, to reverse, modify or affirm, such judgments . . . ."). *See Commonwealth v. Garramone,* 307 Pa. 507, 515, 161 A. 733 (1932) (citing the Act of 1836 in reducing a penalty from death to life imprisonment). The power has been conferred on this court by Section 8 of the Act of June 24, 1895, P. L. 212, 17 P.S. §192 ("The superior court may . . . affirm, reverse, amend or modify any order, judgment or decree as it may think to be just . . . . But it may not increase (although it may reverse) any sentence upon any indictment . . . ."). *See Commonwealth v. Bilinski,* 190 Pa. Superior Ct. 401, 407, 154 A.2d 322 (1959), and *Commonwealth v. Downer,* 161 Pa. Superior Ct. 339, 53 A.2d 897 (1947) (both citing the Act of 1895 as the basis for this court's power to reduce a sentence, but declining in the circumstances to exercise that power). *See also Commonwealth v. Pouls,* 198 Pa. Superior Ct. 595, 182 A.2d 261 (1962) (where the power to reverse was exercised, the court finding a sentence for rape "manifestly excessive" and remanding "for sentencing not inconsistent with this opinion," *id.* at 604, 182 A.2d at 265).

The issue, therefore, is not whether there is appellate review of sentences in Pennsylvania. There is. As I understand Judge HOFFMAN's opinion, however, he would define the scope of that review as including only "the rare case . . . where the sentence imposed raises concerns of constitutional dimensions." *Ante* at 37. I am convinced that there is no such limitation.[1]

---

[1] I therefore find it unnecessary to consider what appears to be the principal difference between Judge PRICE and Judge HOFFMAN, *i.e.,* whether the record in the present case is sufficiently clear to support a finding that the sentence was imposed for the constitutionally impermissible purpose of punishing appellant for not pleading guilty. *See Commonwealth v. Staley,* 229 Pa. Superior Ct. 322, 324 A.2d 393 (1974) (sentencing judge states, "I am disposed

There is nothing either in the Act of 1836, *supra*, or the Act of 1895, *supra*, to support such limitation. To the contrary, each Act is worded in the broadest possible terms ("all manner of errors"; "as it may think to be just"). Moreover, in reversing a sentence as manifestly excessive, neither the Supreme Court in *Garramone*, nor this court, in *Pouls*, intimated that its power to reverse was subject to such limitation. Finally, there is a fundamental reason, more persuasive even than precedent or statute, why the power to review a sentence must extend to any sentence that is manifestly excessive, whether or not any constitutional issue is presented. This reason is that without that power we cannot have a rational criminal justice system.

I know of no better statement of why this is so than the statement by the distinguished authors[2] of the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, at 1-2 (Approved Draft, 1968):

"One of the most striking [ironies of the law] involves a comparison of the methods for determining guilt and the methods for determining sentence. The guilt-determination process is hedged in with many rules of evidence, with many tight procedural rules, and, most importantly for present purposes, with a carefully structured system of appellate review designed to ferret out the slightest error. Yet in the vast majority of criminal convictions—90% in some jurisdictions; 70% in others—the issue of guilt is not disputed.

---

to give him a larger minimum . . . because it was a trial . . . ."). *Cf. Commonwealth v. Martin*, 226 Pa. Superior Ct. 181, 313 A.2d 264 (1973) (opinion in support of reversal, SPAETH, J., joined by HOFFMAN and CERCONE, JJ.), allocatur granted, 5/29/74.

[2] Among these authors was this court's Judge FLOOD, who served as Chairman of the Advisory Committee on Sentencing and Review from its inception in December 1964 until his death in December 1965.

"What is disputed and, in many more than the guilty-plea cases alone, what is the only real issue at stake, is the question of appropriate punishment. But by comparison to the care with which the less-frequent problem of guilt is resolved, the protections in most jurisdictions surrounding the determination of sentence are indeed miniscule . . . .

"It is not an overstatement to say of these jurisdictions that in no other area of our law does one man exercise such unrestricted power. No other country in the free world permits this condition to exist." *And see Appellate Review of Sentences, A Symposium at the Judicial Conference of the United States Court of Appeals for the Second Circuit*, 32 F.R.D. 249, 264-265 (1962) (remarks of Judge SOBELOFF).

In addition to these considerations, there is still another. We routinely review—so routinely that citation would almost insult the reader—the exercise of discretion on the civil side, as, for example, when we decide the reasonableness of an order that a husband shall pay a given sum to his wife for her support, or a father a given sum for the care of his children; or whether a jury's verdict (or for that matter the verdict of a judge sitting without a jury) is excessive; or whether a hearing judge has abused his discretion in opening (or in refusing to open) a judgment, or in imposing sanctions (including dismissal of the action) for failure to comply with some rule or order of court. In all of these cases if we find manifest abuse of discretion we do not hesitate to remedy it. It would indeed demonstrate that our criminal justice system is irrational if we were to say that we would reverse for a manifest abuse of discretion when money is at stake, but not when liberty is.

Nor should we be grudging or hesitant in recognizing and exercising our power to review sentences, for the recognition and exercise of the power does more

than merely ensure a minimum rationality in the criminal justice system. In addition there are served a number of major ends of the system.[3]

First, sentence review provides the criminal justice system with a means by which the manifestly excessive sentence can be corrected. Otherwise the only means available is resort to the executive branch, and experience has shown that this is not effective. To be effective, review must be on a formal and regularized basis.

Second, sentence review contributes to the formulation of sentences reasonably related to the objectives of our criminal sanctions. A sentence too severe does not punish but destroys; one too lenient does not deter but encourages: "Sentence review . . . will force the sentencing decision much more into the open, and thereby expose for correction many of the mistakes that need not be made again. It will get both sentencing and reviewing courts thinking in terms of justifying individual sentences." American Bar Association Standards, *supra* at 2.

Third, and in my view perhaps most important, sentence review induces respect for the law. It thereby assists not only generally in the enforcement of the law but specifically in the rehabilitation of those convicted of violating the law: "Defendants who have an opportunity to air their grievances are much more likely to approach rehabilitation with a positive attitude than defendants who are convinced that one man did them wrong and are told that they can do nothing about it. It is hardly commanding of public respect for our system on the one hand to increase the alternatives of the sentencing judge so that he can shape his sentence to fit each case, and on the other hand to take the posi-

---

[3] The literature on sentence review is extensive and no attempt to collect it is made here. The following enumeration of its advantages is from the American Bar Association Standards, *supra* at 2-3.

tion that he need not explain why he selects a particular sentence and that no one else will look at his decision to see if it makes sense." *Id.* at 2-3.

Finally, sentence review can avoid unnecessary retrials: "The temptation to the appellate court to seize on [technical trial errors] for the reason that justice was denied by too severe a sentence has in fact—by the admission of many experienced appellate judges—induced numerous reversals. Overt appellate review should thus serve to focus such contests on what is really at stake." *Id.* at 3.[4]

---

[4] Although my tenure on this court has been too brief to qualify me as an "experienced appellate judge," even so I have seen enough to join in this statement. The present case is comparatively rare in that appellant only argues that the sentence was excessive. The more usual case, frequently encountered, is where the appellant also asserts trial error, but it is plain that he has little hope of demonstrating error and that "what is really at stake" is the sentence. For a specific illustration, *see Commonwealth v. Pouls, supra* at 604, 182 A.2d at 265, concurring opinion by MONTGOMERY, J.: "I fail to see any merit to appellant's plea for a new trial . . . On the other hand, I am sympathetic to his appeal for help from the effect of his sentence, which is grossly excessive . . . ."

In this connection another observation may be made. It is sometimes suggested that to recognize and exercise the power to review sentences would lead to an increase in the appellate work load. I find this suggestion both unpersuasive and distasteful. It is unpersuasive because the inducement to appeal is already so strong it cannot be made much stronger: most criminal defendants are represented by the Public Defender and have nothing to lose by instructing the Defender to appeal; especially will this instruction be given where the sentence is felt to be excessive. It is distasteful because it "completely evades the issue of whether an appeals procedure is needed to insure the quality of justice that should characterize our courts." *Appellate Review of Sentences, A Symposium of the Judicial Conference of the United States Court of Appeals for the Second Circuit, supra* at 307, 309 (remarks of Representative Celler).

## II

Once the necessity, existence, and proper scope of the power to review sentences are recognized, one's attention turns to defining the procedures that must be followed if that power is to be intelligently exercised.

There is not much in the cases on this subject. However, in *Commonwealth v. Garramone, supra,* the Supreme Court has stated the fundamental procedure. There the defendant pleaded guilty to murder. After hearing evidence on the degree of guilt the lower court adjudged the defendant guilty of murder in the first degree. Thereupon, " '. . . without argument of counsel on either side, the learned trial judge . . . immediately sentenced the defendant to death.' " *Id.* at 514, 161 A. at 735. On the defendant's appeal the Supreme Court held: "We are all of opinion that the gravity of the duty to be performed in such cases requires that the judge who hears the evidence on a plea of guilty, should at least make and file a brief memorandum which will reveal the reasons for the sentence imposed. That procedure will not only facilitate review to determine whether the legislative mandate has been complied with, but will also make it unnecessary for this court to return the record for a written opinion pursuant to Rule 58. As this is the first appeal challenging the penalty imposed pursuant to the statute, we shall dispose of it without delaying decision by remitting the record for such opinion." *Id.*

Our own Rule 46 is to the same effect. It provides that "[i]f the appeal relates to any order, judgment or decree for which the reasons do not already appear of record, the judge below shall forthwith file of record a brief statement of the reasons therefor in the form of an opinion which shall be attached to the record . . . ." I am not aware of any decision of ours comparable to *Garramone,* applying Rule 46 to a judgment of sentence.

The absence of such a decision cannot, however, be regarded as a fact of any consequence. We regularly require "a brief statement of the reasons" for civil judgments. It would make no sense not to do the same for judgments of sentence.

The American Bar Association Standards, *supra*, are in accord. Thus §2.3(c) of the Standards provides: "(c) The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. In cases in which the sentencing judge deems it in the interest of the defendant not to state fully the reasons for the sentence in the presence of the defendant, he should prepare such a statement for transmission to the reviewing court as part of the record." The Standards further provide that there shall be procedures to ensure that the record shall include "a verbatim record of the entire sentencing proceeding," *id.* §2.3(a)(i), "a verbatim record of such parts of the trial . . . or . . . plea, as are relevant to the sentencing decision," §2.3(a)(ii), and "copies of the presentence report" and of other "documents available to the sentencing court as an aid in passing sentence," §2.3(a)(iii).[5]

As is true of sentence review, the necessity for these or comparable procedures arises from the requirements of a rational criminal justice system. This has been well explained by Piero Calamandrei:[6]

---

[5] *Cf.* Pa. R. Crim. P. 1404 (specifying what is proper disclosure of "psychiatric and pre-sentence reports"), and Rule 1405 (affording "the defendant the opportunity to make a statement in his own behalf" and "counsel for both parties an opportunity to present argument and information relative to sentencing").

[6] In *The Crisis in the Reasoned Opinion*, from Procedure and Democracy (1956), quoted in The Law as Literature (ed. E. London, 1960, paperback edition 1966), at 683-84.

"The most important and most typical indication of the rationality of the judicial function is the reasoned opinion.

. . . .

"The major function of the reasoned opinion is an explanatory or, one might say, a pedagogical one. No longer content merely to command, to proclaim a *sic volo, sic iubeo*, from his high bench, the judge descends to the level of the parties, and although still commanding, seeks to impress them with the reasonableness of the command. The reasoned opinion is above all the justification of the decision and as such it attempts to be as persuasive as it can. Ever since justice descended from heaven to earth and the idea gained ground that the judge is a human being and not a supernatural and infallible oracle to be adored, whose authority is beyond question, man has felt the need of a rational explanation to give validity to the word of the judge. And the reasoned opinion is precisely that part of the decision that serves to demonstrate the justice of the decision, and to persuade the losing party that the judgment against him was the inevitable conclusion of a logical process and not the result of oppressive and arbitrary improvisations."[7]

---

[7] *And see* Youngdahl, *Remarks Opening the Sentencing Institute Program, Denver, Colorado,* 35 F.R.D. 387, 388 (1964) ("a good sentence is one which can be reasonably explained") ; N.J. Super. and County Cts. (Crim.) R. 3 :21-2 (probation service to transmit copy of pre-sentence report; "sentencing judge may include with such transmittal a statement of the reasons for the sentence") ; Robinson, *The Defendant Needs to Know,* 26 Fed. Prob. 3 (Dec. 1962). In England and in most European countries the practice is that the reason for a sentence is before the appellate court. Meador, *The Review of Criminal Sentences in England* (1965), reprinted as Appendix C to the American Bar Association Standards, *supra; Appellate Review of Sentences, Hearings on S. 2722 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary,* 89th Cong., 2d Sess. 36-100 (1966). In

## III

It is now in order to determine whether in the present case the sentence is manifestly excessive in that it inflicts too severe a punishment. In making that determination an important inquiry will be whether the sentencing judge did make a reasoned statement in explanation of the sentence.

The facts in support of appellant's conviction may be summarized as follows:[8] On July 27, 1973, two police officers on patrol in a police car observed a "little group" of persons on a street corner in Lancaster. As they drove slowly by, they saw appellant "standing apart" from the group, carrying "a black type bag which [one of the officers said] I suspected to be a purse." They saw appellant drop the bag and start walking toward the street corner. They stopped their patrol car and one of the officers got out and picked up the bag and opened it. Inside he saw a number of packets that he suspected contained marijuana. He called to his fellow officer, who was still in the patrol

---

Massachusetts the appellate court may request a statement of the reason for the sentence. Mass. Gen. Laws Ann. 278, §28B (1959), cited and quoted in American Bar Association Standards, *supra* at 80. *See generally* American Bar Association Standards, *supra*, at 45-47 and Appendices A, B, and C. In addition, in my view an unexplained sentence may be a denial of due process. *McGautha v. California*, 402 U.S. 183, 248 (Dissenting Opinion of BRENNAN, J.). It is, however, not necessary to decide this point, partly because it has not been argued, *cf. Irrera v. Southeastern Pennsylvania Transportation Authority and City of Philadelphia*, 231 Pa. Superior Ct. 508, 331 A.2d 705 (1974), but also because disposition here does not depend on it.

[8] Appellant, and witnesses called by him, testified to different facts, but as the jury evidently did not accept their testimony there is no point in summarizing it here. *Commonwealth v. Minor*, 227 Pa. Superior Ct. 343, 322 A.2d 717 (1974); *Commonwealth v. Herman*, 227 Pa. Superior Ct. 326, 323 A.2d 228 (1974).

car, to apprehend appellant. Chased by the one officer on foot and by the other in the patrol car, appellant ran and eluded the officers. The police obtained an arrest warrant, and on August 3 appellant was arrested. On August 13 the contents of the bag were analyzed. There were sixteen packets of marijuana. Ten of the packets each contained from 2 to 2.8 grams of marijuana, and six from 4.3 to 6.5 grams. In all there were 53.9 grams. An average marijuana cigarette weighs about .4 to .5 grams. (Thus, since one gram would produce about two cigarettes, the small packets would each produce four or five, perhaps six, cigarettes, and the larger from nine to sixteen.)

Immediately after the jury returned its verdict of guilty of possession of a controlled substance with intent to deliver, the court proceeded to sentencing.[9] The hearing was brief in the extreme. First the court asked a police officer whether appellant had any record, and was informed that appellant did not. Next appellant's counsel stated to the court: "As was brought out at the trial, he is twenty-one years old. He is married. He is not currently working because of the place he was employed at had to undergo repairs.

"Other than that, I have nothing to add."[10] Next the court said: "Now, I don't suppose you knew this,

---

[9] When the court asked appellant's counsel, "[D]o you have any motions you wish to make?", counsel, after conferring off the record with appellant, replied, "Mr. Riggins is here before you for sentencing. We do not wish to make any motions." When the court asked, "He knows that he has the right to file motions for a new trial and in arrest of judgment?", counsel replied, "I have gone over that with him, Your Honor, and he also knows that he has a right to appeal any sentence that will be handed down.

[10] It had also been brought out at trial: that appellant had three children, one four years old, one two years old, and one one year old; that the place where he had been employed was a carwash; and that he had been working there until the month before the trial.

Mr. Riggins, but this offense that you have been convicted of calls for a maximum sentence of fifteen years in the Penitentiary and a fine up to Two Hundred and Fifty Thousand Dollars." There then ensued the following colloquy between the court and appellant's counsel: "MR. HAYNES: Your Honor, excuse me; I thought it was a maximum sentence of five years. I may be wrong on that. THE COURT: He is indicted under Section 30.[11] It is a felony. Now, this is classified under Classification [sic; "Schedule" presumably intended] Number one. MR. HAYNES: I don't have a copy of the Act in front of me. THE COURT: Well, you can look at mine, if you wish. I didn't tell the Defendant that I am going to give him fifteen years. I have no intention of it. MR. HAYNES: Your Honor, I was under the impression that for sale it is the maximum sentence of fifteen years and a maximum fine of Two Hundred and Fifty Thousand Dollars ($250,000.00). THE COURT: Yes. MR. HAYNES: And for this offense I was under the impression that the maximum sentence was five years in jail. THE COURT: But he is charged under Section 30 which is the Manufacture, Delivery and Possession with Intent to Manufacture or Deliver a Controlled Substance. You say that the only question is whether

---

[11] Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P. L. 233, No. 64, 35 P.S. §780-113(a)(30), prohibits the following: "Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . . ." Section 13(f) of the Act, 35 P.S. §780-113(f), provides: "Any person who violates clause (30) of subsection (a) with respect to: (1) A controlled substance . . . classified in Schedule I . . . which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity." Schedule I appears in Section 4 of the Act, 35 P.S. §780-104.

this is classified as a narcotic drug, and Schedule One includes marijuana. Of course, Schedule One includes opium and any derivatives of it. MR. HAYNES: Yes, sir, I know that marijuana appears in Schedule One. THE COURT: It is set out alone. All right, he has been indicted and found guilty of Section 30. All right, I am going to sentence him under Section 30(f)(2). The sentence of the Court is that you pay to the Commonwealth for the use of the County a fine of One Hundred Dollars ($100.00), pay the costs of prosecution and undergo imprisonment in the State Correctional Institution at Huntingdon for a period of not less than two nor more than five years. Stand committed."

This proceeding will not withstand examination. Indeed, not to put too fine a point on it, if we are unwilling to reverse here, I fear that many will regard our repeated protestations that we have the power to reverse a manifestly excessive sentence as mere rhetoric.

—A—

In the first place, the court misstated the law. Appellant's counsel was correct that the maximum possible sentence to prison was five years, not, as the court said, fifteen.

As noted in footnote 11, *supra*, Section 13(f)(1) of the Act, 35 P.S. §780-113(f)(1), which is the section authorizing a fifteen-year sentence, refers to "[a] controlled substance . . . classified in Schedule I . . . which is a narcotic drug . . . ." As the court observed, marijuana does appear in Schedule I; but it does not appear there as "a narcotic drug." "Narcotic" is defined in Section 2(b) of the Act, 35 P.S. §780-102(b), as, to summarize, "(i) opium, (ii) any opiate . . . , (iii) any . . . preparation of opium or any opiate, and (iv) any substance . . . chemically identical with any of the substances referred to in (i), (ii) or (iii)." Marijuana is not an opiate. *See generally* W. Eldridge, Narcotics

and the Law 1-2 (2d ed. 1967). Furthermore, the Act also defines "marijuana." To summarize again, and to omit certain exceptions, the definition is, "all parts of the plant Cannabis sativa L." *Id.* §2(b), 35 P.S. §780-102(b). Accordingly, there was no basis for the court's intimidating announcement, in opening the sentencing proceeding, "Now, I don't suppose you knew this, Mr. Riggins, but this offense that you have been convicted of calls for a maximum sentence of fifteen years . . . ."

The proper section of the Act to which to refer appellant was Section 13(f)(2), 35 P.S. §780-113(f)(2). This is so because since marijuana is not a "narcotic", it appears in Schedule I as "[a]ny other controlled substance," Section 13(f)(2) provides that possession with intent to deliver "[a]ny other controlled substance . . . classified in Schedule I . . . is . . . a felony . . . [punishable by sentence] to imprisonment [of] not exceeding five years, or . . . a fine not exceeding fifteen thousand dollars ($15,000), or both."

Judging from the concluding portion of the colloquy, immediately before sentence was imposed the court may have realized its error. Thus the court said: "Schedule One includes marijuana. Of course, Schedule One includes opium and any derivatives of it." This may have been intended as a statement that although Schedule One includes marijuana, it does not include it as an opiate. In support of this interpretation is the fact that when imposing sentence the court stated it was doing so "under Section 30(f)(2)." The fact remains, however, that the court never expressly acknowledged that although marijuana appears in Schedule I, it is not an opiate, and that accordingly, contrary to the court's opening announcement, the sentence could not be fifteen years.[12]

_____

[12] It is not apparent even now that counsel are aware of the court's error in referring to the fifteen year sentence. Neither the

54

In the second place, there is no reasoned statement in explanation of the sentence, and, unexplained, the sentence can only be characterized as manifestly excessive.

Section 13(a)(31) of the Act, *supra*, 35 P.S. §780-113(a)(31), forbids the following: "Notwithstanding other subsections of this section, (i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale.

"For purposes of this subsection, thirty (30) grams of marihuana or eight (8) grams of hashish shall be considered a small amount of marihuana." Section 13 (g) of the Act, 35 P.S. §780-113(g), provides: "Any person who violates clause (31) of subsection (a) is guilty of a misdemeanor and upon conviction thereof shall be sentenced to imprisonment not exceeding thirty days, or to pay a fine not exceeding five hundred dollars ($500), or both."

It will be recalled that in the present case the amount of marijuana appellant was convicted of possessing with intent to deliver was 53.9 grams. This is very little more (23.9 grams or approximately 6 grams less than one ounce) than the "small amount" for possession of which "with the intent to distribute . . . but not to sell" he could have been imprisoned for not more

brief for appellant nor for the Commonwealth alludes to the error; and the Commonwealth contends that "the sentence was well within statutory limits" (Brief at 2), which would be appropriate in describing a two to five year sentence for an offense punishable by up to seven and a half to fifteen years, but is hardly appropriate in describing a two to five year sentence for an offense punishable by no more than two and a half to five years.

than thirty days. Why then, one is compelled to ask, did the court sentence him to prison for two to five years?

If appellant were a known seller of marijuana, the sentence might be held reasonable, the argument being that although appellant had been caught this particular time with only a small amount, the record showed he had made many sales before. In fact, however, the record shows no such thing. Appellant has no record—evidently not even of arrests—and the sentencing judge was so informed. Nor was appellant seen to make any sale or delivery. He was only seen to drop the purse in which the marijuana packets were found. As to the "little group" of persons that the police witnesses said they saw appellant near: the police said they did not notice who these persons were, or what they were doing. (Appellant and his witnesses said they were playing a dice game on the street and scattered when the police car drove slowly by.) Finally, the court not having obtained a pre-sentence report, almost nothing appears regarding appellant's personal characteristics or background. According to appellant's testimony: he is 21 years old; he worked at a carwash until the month before the trial but at the time of trial was unemployed, having been laid off while the carwash was being repaired; he is married; and he has three small children.

Perhaps it may be suggested that the court sought to make an example of appellant and thereby to deter others from possessing marijuana with the intent to deliver it. The court, however, did not say that was its purpose. In any event, this line of reasoning leads to the argument made so forcibly by Judge HOFFMAN: if deterrence was the court's purpose, what possible sense does it make, when much lesser sentences were imposed on persons for possession with intent to deliver more, and harder, drugs (nineteen bags of heroin)? There

may be an answer to this question, but it does not appear of record.

In appraising what does appear of record, it is pertinent to consider the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968). These standards are specifically "recommended" to sentencing judges by the *Comment* to Pa. R. Crim. P. 1405. Section 2.2 of the Standards provides:

"2.2 General principle: judicial discretion.

"The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant."

And Section 2.5 provides:

". . .

"(c) A sentence not involving total confinement is to be preferred in the absence of affirmative reasons to the contrary. Examples of legitimate reasons for the selection of total confinement in a given case are:

"(i) Confinement is necessary in order to protect the public from further criminal activity by the defendant; or

"(ii) The defendant is in need of correctional treatment which can most effectively be provided if he is placed in total confinement; or

"(iii) It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement. On the other hand, community hostility to the defendant is not a legitimate basis for imposing a sentence of total confinement."

When this statement of principles is applied in the present case it becomes apparent that the sentence should be vacated. None of the "legitimate reasons for the selection of total confinement" appears. There is no showing that "[c]onfinement is necessary to protect

the public from further criminal activity" by appellant; no showing that appellant "is in need of correctional treatment which can most effectively be provided" in the Penitentiary at Huntingdon; and, particularly when one considers the lesser sentences imposed on defendants convicted of possession with intent to deliver heroin, no showing that "[i]t would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement."

I do not say that it might not be appropriate to sentence appellant to some period of confinement. Given the jury's finding of intent to deliver, and given a fuller record, some period of confinement might be appropriate. On the record before us, however, there is nothing to support imposition of almost the maximum possible period of confinement.

I would therefore vacate the sentence and remand to the court below for further sentencing consistent with this opinion.