## Commonwealth *v.* Kulp, Appellant.

Argued March 19, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*George W. Westervelt, Jr.,* with him *Martin H. Philip,* and *Cohen, Royle and Ticktin,* for appellant.

*Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 22, 1975:

The appellant herein pleaded guilty to charges of delivery of a controlled substance[1] and criminal con-

---

1. Controlled Substance Act, Act of April 14, 1972, P.L. 233, §13, *as amended,* 35 P.S. §780-113(a)(30) (Supp. 1975-76).

spiracy.[2] He was sentenced to a term of six months to two years imprisonment at the State Correctional Facility at Rockview and a fine of two hundred dollars. In this direct appeal he challenges the validity of his guilty plea and the propriety of the information possibly utilized by the judge at the time of sentencing. For the reasons stated hereinafter we reject appellant's first contention and remand for resentencing in light of his second.

Appellant's first contention, based upon *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), is that his guilty plea was not knowingly and intelligently made because he was not apprised of the nature of the charges against him. *See, e.g., Commonwealth v. Campbell*, 451 Pa. 465, 304 A.2d 121 (1973); *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503 (1973). This argument is without merit. After the indictments were read, the court conducted a colloquy which included, *inter alia,* the following exchange.

"Q. Why do you want to plead guilty?

"A. Because I realize I did wrong.

"Q. What did you do?

"A. I sold some marijuana to two Undercover Agents.

"Q. On one occasion or more than one?

"A. One.

"Q. What amount and how much did you receive?

"A. I received $20.00 and it was an ounce.

"Q. The Conspiracy of the charge?

"A. Carol had to deliver it to me at the gas station. I had it at her house and she brought it to the gas station where I was working.

"Q. I will accept the plea."

It is clear that the appellant was aware of his specific acts which constituted the crimes for which he was

---

2. Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §903 (1973).

charged. *Commonwealth v. Ingram,* supra, does not require the trial judge to explain the nature of the offenses charged to a defendant who already evidences such an understanding. Indeed, the Court in *Ingram* stated, "that an adequate on the record colloquy under Rule 319(a) must include a demonstration 'that the defendant understands the nature of the charges. . . .'" *Id.* at 203, 316 A.2d at 80. *Ingram* does not require this demonstration to issue only from the court.

Appellant's second contention is that the sentencing court improperly relied upon unproven information in determining appellant's sentence. The record reveals the following colloquy:

"[Defense counsel]: [N]eedless to say it was a stupid thing to do, and I think he realizes that certainly at this particular point, but I think even more significant is the fact there is no reason, I believe, to doubt that the sale took place pretty, as such took place pretty much as Mr. Kulp described it. [sic].

"By the Court: This particular sale did, but he was dealing in traffic, which I must keep in mind.

"[by defense counsel]: I don't think there is any indication of that.

"By the Court: Except he did make a sale and there is no indication it is the only sale he ever made. . . .

"[By the District Attorney]: The Commonwealth would point out several factors, one, that the Defendant made the sale at this gas station, which is a major, at this, during this period of time happened to be a major area of drug distribution in the City.

"By the Court to Defendant: The Court might state that I had two or three last week, sales from the same station. . . ."

This Court has recognized before that "[t]he trial judge has broad discretion in imposing sentence," *Commonwealth v. Riggins,* 232 Pa. Superior Ct. 32, 34, 332 A.2d 521, 522 (1974), and that a judge may "consider information in imposing sentence, that would not necessarily be admissible in determining guilt." *Commonwealth v. Johnson,* 235 Pa. Superior Ct. 185, 190, 340 A.2d 515, 517 (1975). *See Commonwealth v. Shoemaker,* 226 Pa. Superior Ct. 203, 313 A.2d 342 (1973). The colloquy in the instant case, however, reveals that the trial judge believed the appellant to be "dealing in traffic" which this Court interprets to mean volume sales of illicit drugs. The only support for such an assumption is found in the information that the location of the single sale has been the situs for previous sales. There is no indication that appellant was in any way involved in such previous activity. The information used by the sentencing judge in the instant case goes far beyond that permitted in cases such as *Commonwealth v. Tisdale,* 233 Pa. Superior Ct. 77, 334 A.2d 722 (1975) and *Commonwealth v. Shoemaker,* supra. As such, the case must be remanded for resentencing.

Judgment reversed and remanded for resentencing consistent with this opinion.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that his guilty plea was not knowingly and understandingly made. Further, appellant claims that the sentencing court considered certain unproven allegations of other, more serious crimes in determining appellant's term of imprisonment.

The facts that led to appellant's arrest are straightforward. On March 1, 1974, appellant sold approximately

one ounce of marijuana to an undercover narcotics agent, Trooper Walter Mazeikas. Appellant made the sale while he was working at the Citgo Gas Station on Washington Boulevard and Railway Street in Williamsport, Lycoming County.

Subsequently, appellant was charged with delivery of a controlled substance,[1] possession of a controlled substance,[2] and criminal conspiracy.[3] Appellant appeared before President Judge GREEVY and pled guilty to all charges on June 28, 1974. The court deferred sentencing pending a pre-sentence report. On August 26, 1974, appellant again appeared before the court and was sentenced to a term of six months' to two years' imprisonment and to pay a fine of two hundred dollars.

Initially, appellant contends that the colloquy that accompanied his plea of guilty did not demonstrate a knowing and intelligent waiver of his right to trial because appellant was not sufficiently apprised of the nature of the charges against him. The appellant relies on *Commonwealth v. Ingram*, 455 Pa. 198, 203-04, 316 A. 2d 77, 80 (1974), decided on January 24, 1974: "In order to demonstrate that a defendant possesses such understanding, he certainly must be told more than just that he has been charged with murder or robbery, for example. While such terms clearly connote some meaning to the layman, this meaning does not always embrace the basic legal elements of the crime. If this were not the case, there would be no need for instructions to a jury on such points, for certainly, an average defendant cannot be

1. Uniform Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §13, imd. effective, as amended 1972, Oct. 26, P.L. 1048, No. 263, §1, imd. effective; 35 P.S. §780-113 (a) (30).

2. Uniform Controlled Substance, Drug, Device and Cosmetic Act, supra, 35 P.S. §780-113 (a) (16).

3. Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, effective six months from date of enactment; 18 Pa. C.S. §903.

presumed to understand more than an average juror. Thus, for an examination to demonstrate a defendant's understanding of the charge, the record must disclose that the elements of the crime or crimes charged were outlined in understandable terms."

The colloquy in the instant case simply does not comport with the mandate of *Ingram*: "Mr. Kulp has been charged as follows, your Honor, he has been charged with on or about, . . . on the 1st of March, 1974, with '1st Count: Delivery of Controlled Substance: feloniously manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance, to-wit, a substance containing Tetrahydrocannabinols; 2nd Count: Possession of Controlled substance: Unlawfully have in his possession a controlled substance, to-wit, a substance containing Tetrahydrocannabinols; 3rd Count: Conspiracy: Agree with another to engage in conduct with [sic] constitutes a crime or an attempt or solicitation to commit a crime; Co-conspirator—a white female known as Carol Reynolds."

"By the Court to Defendant:

"Q. How old are you, Sir?

"A. 24.

"Q. Where do you reside?

"A. I reside at 89 Deerfield Drive, Pottsville, Penna.

"Q. Were you going to school here in Lycoming County?

"A. No, Sir, I was working for PennDot as a Draftsman.

"Q. Have you ever been in criminal trouble before?

"A. No, Sir.

"Q. Mr. Felix has advised you of all your rights?

"A. Yes, Sir.

"Q. You understand what you are charged with?

"A. Yes, Sir.

"Q. You understand what the sentence could be?

"A. Yes.

"Q. You realize if you do not plead guilty you could have trial by Jury or the Court without a Jury?

"A. Yes.

"Q. You would be presumed innocent until proven guilty beyond a reasonable doubt?

"A. Yes.

"Q. That your accusers would have to face you and testify against you and be subject to cross-examination?

"A. Yes.

"Q. Why do you want to plead guilty?

"A. Because I realize I did wrong.

"Q. What did you do?

"A. I sold some marijuana to two Undercover Agents.

"Q. On one occasion or more than one?

"A. One.

"Q. What amount and how much did you receive?

"A. I received $20.00 and it was an ounce.

"Q. The Conspiracy of the charge?

"A. Carol had to deliver it to me at the gas station. I had it at her house and she brought it to the gas station where I was working.

"Q. I will accept the plea."

Appellant's plea was entered subsequent to the decision in *Ingram*. And yet as often as I review the colloquy in the instant case, I fail to find where "the record . . . disclose[d] that the elements of the crime or crimes charged were outlined in understandable terms." That appellant stated that his attorney informed him, de hors the record, of his rights is irrelevant. The thrust of *Ingram* is to guarantee an accused full advisement of his or her rights "while simultaneously facilitating appellate review." 455 Pa. at 205, 316 A. 2d at 81.

In addition to the court's failure to conform with the specific mandate of *Ingram,* appellant contends that the sentencing court relied on unproven information in deter-

mining appellant's sentence. During the course of the August 26, 1974 sentencing hearing, the following discussion occurred:

"[Defense counsel]: . . . [N]eedless to say it was a stupid thing to do, and I think he realizes that certainly at this particular point, but I think even more significant is the fact there is no reason, I believe, to doubt that the sale took place pretty, as such took place pretty much as Mr. Kulp described it.

"By the Court: This particular sale did, but he was dealing in traffic, which I must keep in mind.

"[By defense counsel]: I don't think there is any indication of that.

"By the Court: Except he did make a sale and there is no indication it is the only sale he ever made. . . .

"[By the District Attorney]: The Commonwealth would point out several factors, one, that the Defendant made the sale at this gas station, which is a major, at this, during this period of time happened to be a major area of drug distribution in the City.

"By the Court to Defendant: . . . The Court might state that I had two or three last week, sales from the same station . . ."

In *United States v. Tucker,* 404 U.S. 443 (1972), the United States Supreme Court held that because the sentencing judge considered three prior felony convictions that were *subsequently* overruled, the petitioner was entitled to reconsideration of his sentence. In the instant case, the sentencing court considered offenses for which appellant was not indicted, that may not have occurred, and which may not have involved appellant. Such egregious disregard for due process cannot be tolerated in a fair system.

Thus I would remand for retrial.

SPAETH, J., joins in this dissenting opinion.

---

CONCURRING AND DISSENTING OPINION BY PRICE, J.:

On June 28, 1974, appellant John A. Kulp pleaded guilty to charges of possession[1] and delivery[2] of a controlled substance and of criminal conspiracy.[3] The lower court sentenced him to a fine of $200.00 plus the cost of prosecution and to a term of imprisonment of not less than six months nor more than two years. On this appeal, appellant contends that his guilty plea was invalid because the colloquy conducted by the lower court did not adequately reveal that appellant understood the charges against him. Alternatively, appellant argues that the plea was invalid because the colloquy did not reveal that appellant was aware of the essential ingredients of a jury trial. Finally, appellant contests the propriety of the information considered by the trial judge in imposing sentence.

I concur in the majority's conclusion that the record clearly reveals that appellant understood the nature of the charges against him. In addition, I find appellant's alternative argument to be without merit. *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974), requires, before the court can accept a plea of guilty, that a colloquy appear on the record demonstrating " 'that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.' " 455 Pa. at 201, 316 A.2d at 79, quoting from *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 106, 237 A.2d 196, 198 (1968). Without these details in the record, an appellate court cannot conclude that the plea was voluntarily and intelligently entered.

---

1. Act of April 14, 1972, P.L. 233, No. 64, §13 (35 P.S. §780-113(a)(16)), *as amended* (Supp. 1975-76).

2. Act of April 14, 1972, P.L. 233, No. 64, §13 (35 P.S. §780-113(a)(30)), *as amended* (Supp. 1975-76).

3. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §903).

*Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973), requires, before the court can accept the waiver of a jury trial, that a colloquy appear on the record demonstrating that the defendant was aware of the essential ingredients of a jury trial—the members of a jury must be chosen from members of the community, the verdict must be unanimous and the accused must be allowed to participate in the selection of the jury panel. The appearance of these facts in the record insures that the waiver was knowing and intelligent.

The colloquy required by *Ingram* has not been held to encompass the colloquy required by *Williams,* nor is there any reason to so require: The waiver of a jury trial, where the defendant proceeds to a determination of his (still denied) guilt by a judge, is qualitatively different than the waiver involved in a plea of guilty, where no such determination will be made. When a defendant waives a jury trial, the trial process changes only in that the facts are found by the court instead of by a jury. When a defendant pleads guilty, he is, effectively, waiving his right to trial. Of course, the defendant must understand these facts. However, extending appellant's argument to its logical conclusion would require, before a guilty plea could be accepted, that a defendant understand every procedural aspect of a criminal trial, and that that understanding be determined by inquiry appearing on the record. Our supreme court has not yet so dictated. Thus, I concur in the majority's conclusion that the requirements of *Ingram, supra,* were satisfied.

However, I must dissent from the majority's conclusion that the lower court judge considered improper information in determining sentence. Therefore, I would affirm the judgment of the lower court.

The following colloquy took place at the sentencing hearing:

"By Mr. Felix (attorney for the appellant):

. . . but I think even more significant is the fact there

is no reason, I believe, to doubt that the sale took place pretty, as such took place pretty much as Mr. Kulp described it.

By The Court:

This particular sale did, but he was dealing in traffic, which I must keep in mind.

By Mr. Felix:

I don't think there is any indication of that.

By The Court:

Except he did make a sale and there is no indication it is the only sale he ever made.

By Mr. Felix:

There is no indication there was any others.

By The Court:

The Court takes a different look at Possession than it does Sale.

. . .

[T]his Court, will make it much more serious for Sales than Possession. We feel that these young men that for their own gain, if it is only once, it was only once, we must look at these differently. I will be happy to hear anything you have to say." [NT 7-8].

Appellant argues that the lower court erred in sentencing appellant while assuming that he had made other sales. While, as a general proposition, I agree that it would be error for a lower court to assume that a defendant has committed undiscovered offenses in the past, for the reasons that follow, I am unconvinced that that is what transpired in the case before us.

Preliminarily, however, I feel compelled to reiterate that broad discretion is vested in the trial judge to impose sentence. *Commonwealth v. Riggins*, 232 Pa. Superior Ct. 32, 332 A.2d 521 (1974). Pennsylvania trial judges may consider information in imposing sentence which would not be admissible in determining guilt. *Commonwealth v. Johnson*, 235 Pa. Superior Ct. 185, 340 A.2d 515 (1975). "[T]he sentence imposed . . . will not be

reviewed by an appellate court, unless it exceeds the statutorily prescribed limits or is so manifestly excessive as to constitute too severe a punishment." *Commonwealth v. Wrona,* 442 Pa. 201, 206, 275 A.2d 78, 80-81 (1971) ; *Commonwealth v. Johnson,* 235 Pa. Superior Ct. 185, 190, 340 A.2d 515, 518 (1975) ; *Commonwealth v. Shoemaker,* 226 Pa. Superior Ct. 203, 214, 313 A.2d 342, 348 (1973), *aff'd,* 462 Pa. 354, 341 A.2d 111 (1975).[4]

The above rules are not unreasonable maxims designed to prevent appellate review of an unfairly imposed sentence. On the contrary, appellate courts must have a standard by which to review an exercise of discretion by a lower court. The above rules provide us with such a standard. The standard is, undoubtedly, weighted in favor of upholding the trial judge's action. This, too, is based in reason, for the trial judge "sees the defendant and hears the witnesses." *Commonwealth v. Downer,* 161 Pa. Superior Ct. 339, 344, 53 A.2d 897, 900 (1947). In addition, the trial judge is far more likely to be familiar with the community, its problems and its needs, than is an appellate court. Finally, appellate courts are inclined to place great reliance on trial judges because the day-to-day workings of the judicial system inevitably depend on their competence. Trial court judges provide the basis on which the judicial structure stands. When in doubt, a presumption that their actions are correct *must* be indulged; any other attitude invites judicial chaos.

In a slightly different context, Judge WOODSIDE eloquently observed that, "[j]udges are human, but they are also specially trained to decide cases on the evidence. They are conscious of the dangers of irrelevant facts and zealously guard themselves against being influenced by any facts not obtained from the evidence. Furthermore,

---

4. *Shoemaker* was affirmed by the Supreme Court of Pennsylvania because the appellant had failed to preserve the issue for appellate review. Thus, the court never reached the appeal on the merits.

just as it is impossible in some notorious cases to obtain jurors who know nothing of the defendant and the crime, so is it impossible for a judge to be free of all knowledge concerning notorious crimes and defendants. We are satisfied that the trial judge decided the case on the evidence, that he zealously protected the defendant's interests and that he was not prejudiced or influenced in his decision. . . ." *Commonwealth v. Berkery,* 200 Pa. Superior Ct. 626, 629-30, 190 A.2d 572, 574 (1963), *cert. denied,* 375 U.S. 966 (1964).

In this case, I am convinced that the lower court did not consider improper evidence in imposing sentence. Initially, I consider the sentence itself: appellant was sentenced to a term of six months to two years imprisonment. The permissible sentence is up to five years imprisonment on the conviction for delivery of a controlled substance.[5] The permissible sentence is up to seven years imprisonment on the conviction for criminal conspiracy.[6] The sentence was well within the statutory limits, and was not so excessive or severe as to constitute an abuse of discretion.

Secondly, my consideration of the record leads me to conclude that the isolated remark of the trial judge does not indicate that the judge considered improper information. An overall review of the record reveals that the trial judge was concerned with two aspects of the case in determining sentence. First, he felt that the sale of a controlled substance was a more culpable offense then mere

---

5. Act of April 14, 1972, P.L. 233, No. 64, §13(f)(2), *as amended* (35 P.S. §780-113(f)(2)) (Supp. 1975-76).

6. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §905(b)), places conspiracy in the same grade as the most serious offense which is the object of the conspiracy. 18 Pa.C.S. §106(b)(5) states that "[a] crime declared to be a felony, without specification of degree is of the third degree." Thus, conspiracy to deliver a controlled substance is a felony of the third degree. 18 Pa.C.S. §1103(3) imposes a sentence of not more than seven years on convictions of felonies of the third degree.

possession. This is a reasonable consideration in light of the legislature's authorization of greater penalties for a sale than for possession. Second, the judge felt that the situs of the sale was relevant to the determination of sentence. The judge knew, from other cases before him at the time, that the place where the sale occurred, a gasoline station, was a local marketplace for drug sellers and purchasers. Though this evidence may not be admissible to prove guilt, it would be admissible for determining sentence. Furthermore, I believe that it is a relevant consideration. A sale that occurs at a known market can indicate a greater criminal involvement than does a sale that takes place elsewhere. And a judge, with the welfare of his community in mind, may and should consider such factors in sentencing, as well as in other matters.

It is true that the judge stated that appellant was "dealing in traffic," and when told that there was no evidence of any other sales made by appellant, the judge stated that, "he did make a sale and there is no indication it is the only sale he ever made." However, I do not believe that this isolated comment necessarily indicates that the judge sentenced appellant with the belief in mind that he made other sales. Appellant's counsel rebutted the judge's statement, pointing out that there was no indication that appellant had ever made other sales. The judge apparently accepted this rebuttal, stating, "if it is only once, it was only once. . . ." However, the judge went on to repeat his belief that a sale is a more serious offense than possession. Appellant's father then stated to the court that he had never had any other indications that his son was connected with drugs. Thus, appellant was able to rebut the judge's statement. *Cf. Commonwealth v. Shoemaker, supra.*

Considering the entire record, together with the actual sentence imposed, I do not conclude that the trial judge erred in his consideration and imposition of sentence.

I would affirm the judgment of the lower court.