397 A.2d 1187

**COMMONWEALTH of Pennsylvania**

v.

**Charles M. ROBERTS a/k/a Charles Mark Rosen, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1977.

Decided Dec. 29, 1978.

Reargument Denied March 5, 1979.

Petition for Allowance of Appeal Denied April 16, 1979.

238

William H. Wolf, Philadelphia, for appellant.

D. Michael Emuryan, Assistant District Attorney, Media, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial commenced on October 14, 1975, appellant was convicted of involuntary deviate sexual intercourse [1] and corruption of a minor.[2] Post-verdict motions were denied, and appellant was sentenced to a prison term of from three to six years and ordered to pay the costs of prosecution. Appellant now alleges several instances of error on the part of the court below, as well as the ineffectiveness of trial counsel. Finding these contentions to be without merit, we affirm the judgment of sentence.

The facts pertinent to our decision are as follows. On March 25, 1975, appellant and fifteen year old Richard Dormer were working out at Ryan's Gymnasium in Glenolden, Delaware County. Because appellant was wearing a suit emblazoned with "Gold's Gym", a nationally recognized body building gym in Los Angeles, Dormer and his companions engaged him in conversation concerning training techniques. Appellant offered some pieces of advice, then inquired of Dormer and a friend, John Henry, if they would be interested in earning $10,000 for acting in a proposed movie to be made in Philadelphia. Henry's father, present in the gym, rejected the idea, but appellant and Dormer continued the conversation in the parking lot. At that time, appellant indicated to Dormer that there would be some homosexuality in the film, although Dormer himself would not be involved. If Dormer were interested, however, he would have to pass a reading test to be conducted in appellant's hotel near Media.

1. 18 Pa.C.S. § 3123.

2. 18 Pa.C.S. § 3125.

Dormer testified that following a brief drive to the hotel, appellant directed him to undress and recite from an article in the magazine "Psychology Today." Shortly thereafter, appellant orally stimulated Dormer with the aid of a vibrator. Subsequently, Dormer accepted an offer of an additional $5,000 [3] made by appellant to sodomize him. In contrast, appellant contended that the two had merely talked and nothing of a sexual nature had transpired. The jury chose to believe Dormer's account.

■ Appellant first argues that the lower court erred in (1) excluding the proffered testimony of five females who would have testified to numerous heterosexual encounters with appellant; and (2) permitting the district attorney to argue in closing that a photograph of appellant's abdomen unnaturally highlighted a scar on that part of the body. We do not reach the merits of these arguments because we find both to have been waived. Neither were raised in post-verdict motions as is mandated by *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), and are thus not properly preserved for appellate review. *See also Commonwealth v. Waters,* 477 Pa. 430, 384 A.2d 234 (1978); *Commonwealth v. May,* 466 Pa. 524, 353 A.2d 815 (1976); *Commonwealth v. Gardner,* 246 Pa.Super. 582, 371 A.2d 986 (1977). While strict adherence to the *Blair* mandate has been modified to allow review when an issue is not included in post-verdict motions, but briefed and addressed by the court below, *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977), and *Commonwealth v. Pugh,* 476 Pa. 445, 383 A.2d 183 (1978), this 'savings clause' is here not available to appellant. Further, it is of no import that appellant's present counsel was not so engaged at the time of trial or post-verdict motions.[4]

**3.** Dormer testified that appellant's final offer totaled $20,000: $10,-000 for appearing in the movie; $5,000 for applying a vibrator to appellant's penis; and $5,000 for placing his mouth on appellant's penis.

**4.** It is, of course, another question as to whether appellant enjoyed effective representation in light of counsel's election not to include

Appellant next contends that he was denied effective assistance of counsel when his trial counsel failed to object and/or move for a mistrial in response to the testimony of a Commonwealth witness concerning appellant's post-arrest silence following reception of his *Miranda* rights. The comment in question was made during the following exchange between the prosecuting attorney and one of the arresting officers:

"Q. And, when he was brought into the police station, did you interview him?

A. Yes, sir, I did. Mr. Roberts [appellant] made no statement. Of course, he was advised again of his constitutional rights. He made no statement, made no defense."

N.T. 234.

■ Initially, it is clear that the ineffective assistance allegation is properly before us. *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975). The test for reviewing such claims was promulgated in the leading case of *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967):

"Our task in cases of this nature therefore encompasses both an independent review of the record, see *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A.2d 236 (1967), and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. . . . We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. . . . [T]he balance tips in favor of a finding of effective assistance as soon as it is deter-

these arguments in post-verdict motions. We are not asked to decide this issue, however.

mined that trial counsel's decision had any reasonable basis." *Id.,* 427 Pa. at 604–05, 235 A.2d at 352–53. (Emphasis in original, footnote omitted).

When it is impossible to determine from the record whether or not the action of trial counsel could have had a rational basis, an appellate court may remand the case for an evidentiary hearing to establish counsel's reason for his course of action. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Payton,* 253 Pa.Super. 422, 385 A.2d 410 (1978). Such a procedure is not necessary, however, if from the record it is apparent that the action claimed to constitute ineffectiveness was in fact within the realm of trial tactics or strategy. *Commonwealth v. Wade,* 480 Pa. 160, 389 A.2d 560 (1978); *Commonwealth v. Payton, supra.* As discussed *infra,* we conclude that failure to object involved a legitimate decision as to trial strategy, thus rendering appellant's claim baseless.

 It is well settled that any trial reference to an accused's silence following reception of the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is improper and constitutes an impingement upon his constitutional right to remain silent.[5] *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 1230, 14 L.Ed.2d 106 (1965); *Commonwealth v. Humphrey,* 473 Pa. 533, 375 A.2d 717 (1977); *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973). Consequently, had appellant's counsel

5. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), held that the fifth amendment forbids comment by the prosecution on the accused's silence at trial. As has been noted frequently since that time, the distinction between prosecutorial use of an accused's silence at trial as opposed to his silence at the time of arrest is "infinitesimal." *See, e. g., Gillison v. United States,* 130 U.S.App.D.C. 215, 216, 399 F.2d 586, 587 (1968); *Commonwealth v. Haideman,* 449 Pa. 367, 370, 296 A.2d 765, 767 (1972). As was noted in *Haideman,* it would be "naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Id.,* 449 Pa. at 371, 296 A.2d at 767, *quoting Walker v. United States,* 404 F.2d 900, 903 (5th Cir. 1968).

objected to this reference in the instant case, it clearly would not have been a frivolous action.

Our supreme court has ruled, however, that mention of such silence does not automatically mandate the grant of a mistrial. *Commonwealth v. Maloney, supra.* Rather, it is within the discretion of the trial judge to determine whether the harm may be removed by curative instructions after a consideration of: (1) the nature of the reference, *i. e.* whether it was a specific comment on the accused's silence as opposed to a reference to the fact that incriminating evidence of the Commonwealth was undenied or uncontradicted; and (2) whether the accused's silence was exploited by the district attorney. *Commonwealth v. Maloney, supra,* 469 Pa. at 349, 365 A.2d at 1241. In *Maloney,* the arresting officer testified that the defendant refused to give a statement when read his *Miranda* rights. No objection was made at the time, but later during the examination of the officer, the district attorney again asked if no statements were taken from the defendant. The officer answered affirmatively, and a mistrial was requested. The supreme court affirmed the trial judge's denial of a mistrial in favor of curative instructions in view of the fact that the reference was isolated, it was not procured by prosecutorial exploitation, and the prosecution did not request the jury to draw an improper inference. Thus, in the instant situation, where the reference was isolated within some 500 pages of testimony with no inference asked to be drawn by the Commonwealth it is doubtful if a request for a mistrial would have been granted.

Nevertheless, a timely objection would have properly elicited at least curative instructions. Failure to ask for such instructions does not, however, demand a finding of ineffective assistance. A situation similar to the one *sub judice* is found in *Commonwealth v. Humphrey, supra.* In *Humphrey,* trial counsel failed to object not only to three separate references by Commonwealth witnesses concerning the accused's silence at arrest, but also to the same fact

being mentioned by the lower court in its charge. Our supreme court noted:

"[T]he failure to object could have been born of a reasonable, calculated trial strategy. It is not inconceivable that defense counsel believed that a mistrial would not be granted and that he did not wish to risk calling additional attention to the [references] by way of requested cautionary instructions. Furthermore, even if it be assumed that a mistrial could have been obtained, trial counsel may have thought nonetheless that the presentation of the defense had gone well and that, notwithstanding the [references, Humphrey] stood a good chance with the jury to whom this presentation had been made." *Id.* 473 Pa. at 538, 375 A.2d at 719, *quoting Commonwealth v. Hubbard,* 472 Pa. 259, 285, 372 A.2d 687, 699 (1977).

A post-conviction hearing in *Humphrey,* however, revealed that counsel's failure to object was predicated not on such tactical consideration, but rather because: (a) he did not believe the statements were harmful; and (b) he assumed that such references were proper as evidence of tacit admissions. Thus, counsel's lack of knowledge as to the state of the law indicated that degree of "sloth and unawareness" which characterizes ineffective assistance.

Instantly, we do not have the benefit of a post-conviction hearing, nor do we view one as necessary. Because of the fleeting nature of the reference, and failure of the prosecutor to either emphasize it or ask the jury to draw a prejudicial inference, the case differs factually from *Humphrey.* Here, curative instructions could well have constituted an ill-advised method of focusing attention on the incident. Because there was this reasonable basis for not interposing an objection, we cannot deem counsel's stewardship ineffective.

Finally, appellant argues that a remand for resentencing is necessitated by the lower court's failure to articu-

late its rationale for the imposition of sentence in accordance with the tenets of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977).[6] As was reiterated in *Riggins,* the Pennsylvania concept of indeterminate sentencing requires " 'an implicit adoption of the philosophy of individual sentencing.' " *Id.,* 474 Pa. at 122, 377 A.2d at 143, *quoting Commonwealth v. Martin,* 466 Pa. 118, 130, 351 A.2d 650, 656 (1976). Such a system necessarily invests the trial judge with broad discretion in choosing the proper sentence to effectuate the individual's rehabilitation. *Commonwealth v. Martin, supra,* 466 Pa. at 130, 351 A.2d at 656. So as to minimize indiscriminate sentencing, our supreme court has demanded that certain criteria [7] be considered by the sentencing judge and the reasons for the sentence be stated on the record. *Commonwealth v. Riggins, supra; see also Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Wareham,* 259 Pa.Super. 527, 393 A.2d 951 (1978).

▮ Instantly, the lower court has comported with these mandates as evidenced by several factors. First, the court had the benefit of sufficient and accurate information concerning appellant as contained in the pre-sentence report; a report to which specific reference was made in the lower court's opinion. Moreover, not only did appellant himself supplement this information during the sentencing hearing, but presented both his father and a business associate to provide statements as to his background and character. Thus, this is not a case such as *Commonwealth v. Kostka, supra,* in which the trial judge admitted to having little knowledge of the defendant.

Second, the lower court considered the personal character of appellant and the peculiar circumstances of the crime.

---

**6.** The recent resolution of *Secrest v. Commonwealth,* 482 Pa. 458, 393 A.2d 1197 (1978), leaves no doubt that our supreme court intends *Riggins* to be retroactive.

**7.** *See* The Sentencing Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1321, *as amended,* 18 Pa.C.S. § 1321 *et seq.* (Supp.1978).

The fact that the crime would have been a misdemeanor had the victim been three months older was viewed as a mitigating factor. Further, the court balanced the considerable harm to the victim with the future prospects of appellant, who impressed the sentencing judge as an astute businessman.

Finally, the court enunciated the reasons for the sentence on the record. The option of probation was considered and specifically rejected. Although no mention was made of Section 1322 of The Sentencing Code,[8] which delineates the factors to be accorded weight in favor of an order of probation, the record is clear that they were seriously considered, *e. g.,* the harm to the victim, appellant's prior criminal record, and the possible beneficial effect of probation. (Sentencing Hearing 30–33). The court believed a prison term necessary so that "if you [appellant] stray again from the lawful path, you have to be confronted with the sentence imposed on this occasion." (Sentencing Hearing 34). In this event, the sentence of three to six years was well within the statutory maximum of ten to twenty years. Simply because the judge did not list his reasons *seriatim* with specific reference to the Sentencing Code, we cannot say that the demands of *Riggins* were flouted when substantial consideration was clearly given to the individual circumstances and the reasons for the sentence appeared of record.

The judgment of sentence is therefore affirmed.

CERCONE and SPAETH, JJ., concur in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

8. 18 Pa.C.S. § 1322.